IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 24, 2007

**STATE OF TENNESSEE v. ROBIN M. CHAMBERS**

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S50, 441-44; S50, 779-80  R. Jerry Beck, Judge**

---

**No. E2006-02147-CCA-R3-CD - Filed October 2, 2007**

---

The defendant, Robin M. Chambers, pled guilty to twenty-two counts of forgery, Class E felonies, twenty-three counts of identity theft, Class D felonies, three counts of theft of property under $500, Class A misdemeanors, and one count of criminal impersonation, a Class B misdemeanor.  The defendant was sentenced to fourteen years and six months in confinement as a Range I, standard offender.  The defendant was denied alternative sentencing by the trial court.  On appeal, the defendant argues that the trial court erred in denying her alternative sentencing instead of the imposed term of confinement.  Following our review of the full record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Frank L. Slaughter, Jr., Bristol, Tennessee, for the appellant, Robin Chambers.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; H. Greeley Wells, District Attorney General; and James F. Goodwin and B. Todd Martin, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.  FACTS**

This case relates to the theft and forgery of checks by the defendant.  The defendant pled guilty.  At the plea acceptance hearing, the state recounted the following incidents of incriminating proof as follows:

> . . . Ruby Chestnut, the victim in the case, lives in Rogersville and was out in her yard
> . . . in October of 2004, when she observed a red car with three occupants coming

down her driveway in the direction away from her house. An approximately six foot tall woman with long straight hair got out of the car and asked Ms. Chestnut a question. This female got back in the car and left, after Ms. Chestnut was unable to help her. Ms. Chestnut became suspicious, and, immediately, went inside her house, where she discovered that her purse had been stolen. The purse contained checks in her name drawn on a U.S. bank account as well as a Shell Credit Card.

The State would have also offered proof that on or about October 23, 2004, a check was forged at the Food City on Moreland Drive in Sullivan County for [$132.06.] On October 24, 2004, another check was forged on her account at the Food City on Eastman Road in the amount of [$95.18.] And a third check was forged the same day at Food Lion, located at Kings Plaza in Kingsport, Sullivan County in the amount of $64.14. In all, seven checks on Ms. Chestnut's account . . . were written without her authorization to the Food City, Food Lion, Wal-Mart stores in Sullivan County and the total of the transactions was approximately [$763.57.]

On January 31st, 2005, Detective John Blessing with the Kingsport Police Department took a sworn statement from . . . the defendant . . . at the Washington County Jail. [The Defendant] stated that she was an associate of Jeff Honeycutt, the Co-Defendant in this case, as well as Tammy Matthews, also a Co-Defendant in this case. [The Defendant] . . . confessed to passing a check at Food City and other businesses in Sullivan County. She remembered the names of four of the victims.

On February 1st, 2005, [the Defendant] told David Quillen, a former detective of the Kingsport Police Department that she remembered going to Rogersville with the Co-Defendants; that she recalled getting out of the car and talking to an elderly woman, who was working in her yard, and asking her a question. She stated that when she got back into the car, that this woman's purse was in the car and that Tammy Matthews had taken it; that Ms. Matthews had told Ms. Chambers that she went into the house through an unlocked rear door and found the purse in plain view. . . . [The] three of them went to a convenience store and a small town grocery store . . . She said that they would go to a store and buy stuff, some things or items, and then trade those items for crack cocaine. She stated that the handwriting on three of the checks that were shown to her by Detective Quillen looked like her own hand.

[On] February 24th, 2005, Detective Quillen showed Ms. Chestnut a series of photographs, one of which was a photograph of [the Defendant]. Ms. Chestnut chose [the Defendant] from the photo array and stated that she looked most like the person that had talked to her on her lawn that day, and that all the checks and transactions took place in Sullivan County.

. . . The state would have offered proof that on or about October 25, 2004, Doris Houser reported to the Kingsport Police Department that her purse had been

2

stolen. She was contacted by her bank that checks had been passed at Pappy [sic] John's Pizza for [$36.63] . . . and at Food City in the amount of [$172.96.] The transaction at Food City grocery store was caught on video. The video showed the Defendant, Robin Chambers, passing the forged check. She was also interviewed by Detective Blessing, wherein she admitted to forging the checks on Ms. Hosuer's account at Food City and the pizza place . . . Both checks were passed and forged without the consent or knowledge of Ms. Houser, and again, that was in Sullivan County.

. . . .

. . . [T]he State would have offered proof that on or about November 12, 2004, [the Defendant] presented a stolen check to the Food City on Virginia Avenue in Bristol, Tennessee. The amount of that check was . . . [$103.47.] [The Defendant] did not have permission or authorization from the victim, Virginia Felty, to use or sign this check. The check had been stolen on the same day that the Defendant passed it. It was stolen from the victim's home in Bristol, Virginia . . . Detective Paul Ogletree asked Ms. Wood [an accomplice suspect] to describe [the Defendant] to him and it became apparent that [the Defendant], from that description, was the person on the video on the November 12, 2004, forgery. The detective then got a photograph of the Defendant and compared that to the video and then lodged these charges. That check was also passed in Sullivan County.

. . . [T]he State would have offered proof that on December 27, 2004, Tina Rogan . . . reported that someone had stolen her mother's checkbook from her home . . . in the Kingsport area of Sullivan County. The victim, Margaret Castle, did not know how the checks were taken, but she did not give anyone permission or consent to have her checks or use her checks. On or about November 23, 2004, [a check] was passed at the Food City store on Eastman Road in Kingsport, Sullivan County. That check was written in the amount of [$148.89.] The person who passed this check was identified as the Defendant . . . On January 31, 2005, Detective John Blessing was able to interview [the Defendant] at the Washington County Jail at which time she admitted to passing several checks on the account of Ms. Castle and without Ms. Castle's consent or knowledge. [The Defendant] admitted to passing [checks] at the Food City in Kingsport in the amount of [$109.43], and also . . . in the amount of [$97.79] at the same Food City in Kingsport, Sullivan County, Tennessee.

. . . [T]he State would have offered proof that on or about March 25, 2005, Officer Russell T. Orr of the Bristol Tennessee Police Department received information that [the Defendant] was staying at the Regency Inn . . . in Bristol, Sullivan County, Tennessee. Officer Orr knew that [the Defendant] had an active arrest warrant on her out of Bristol. Officer Orr . . . attempted to make contact with [the Defendant]. A female answered the door in Room 256 and identified herself as Michelle Tyler. . . . The officer had a picture of [the Defendant] and it matched the

female subject . . . . After getting information from the female, Officer Orr learned that her real name, was, in fact, Robin Chambers, and Ms. Chambers was arrested at that time, and, again, that was in Sullivan County, Tennessee.

The state continued to recount numerous other instances in which the defendant participated in the theft of checks, forged victims' signatures, and passed those checks to various merchants in Sullivan County. The state also indicated that the victims would have testified at trial that all of these checks were forgeries and were passed without their authorization or consent.

On May 11, 2006, the defendant pled guilty to identity theft and forgeries involving seven separate victims and a total amount of $2,223.99 in stolen funds. At the conclusion of the defendant's guilty plea, the trial court imposed a total effective sentence of fourteen years and six months.

An alternative sentencing hearing was held on September 8, 2006. At the hearing, it was determined that the defendant had been previously convicted on twenty-three counts of forgery and one count of theft under $500. As a result of those convictions, the defendant was granted judicial diversion in Washington County. The defendant's judicial diversion was later revoked and she was placed on supervised probation due to the fact that she could not hold a steady job, changed addresses frequently, and absconded after testing positive for marijuana. Thereafter, the defendant's supervised probation was revoked upon her arrest for the offenses committed in the present case.

At the conclusion of the alternative sentencing hearing, the trial court denied defendant's request for alternative sentencing, and ordered the defendant to serve eleven years in confinement as a Range I offender, and three years and six months on probation. A fine of $5,000 was waived by the court and the defendant was ordered pay restitution to the victims.

## II. ANALYSIS

On appeal, the defendant argues that the trial court erred by denying her alternative sentencing.

Before a trial court sentences a convicted defendant, it must consider (1) the evidence received at the trial and/or sentencing hearing; (2) the presentence report; (3) the principles of sentencing; (4) the arguments of counsel relative to sentencing alternatives; (5) the nature and characteristics of the criminal conduct involved; (6) any mitigating or enhancement factors; (7) any statements made by the defendant in his or her own behalf; and (8) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). The trial court is also required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated in determining the sentence. *Id.*

Appellate review of a challenged sentence is a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401 (2006). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). On appeal, the defendant has the burden of showing that the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

A defendant is eligible for probation if the actual sentence imposed is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. *See* Tenn. Code Ann. § 40-35-303(a) (2006). In addition, a defendant is presumed to be a favorable candidate for alternative sentencing if the defendant is an especially mitigated or standard offender convicted of a Class C, D, or E felony and there exists no evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). However, this presumption is unavailable to a defendant who commits the most severe offenses, has a criminal history showing clear disregard for the laws and morals of society, and has failed past efforts at rehabilitation. *Id.* § 40-35-102(5); *State v. Fields*, 40 S.W.3d 435, 440 (Tenn. 2001).

A trial court shall automatically consider probation as a sentencing alternative for eligible defendants. Tenn. Code Ann. § 40-35-303(b). A trial court must also presume favorable candidacy for alternative sentencing unless it is presented with evidence sufficient to overcome this presumption. *See Ashby*, 823 S.W.2d at 169. The presumption in favor of alternative sentencing may be overcome by facts contained in the pre-sentence report, evidence presented by the state, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). Moreover, entitlement to probation is not automatic and the defendant still bears the burden of proving suitability for full probation. Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; *see State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997).

Guidance as to whether the trial court should grant alternative sentencing or incarcerate is found in Tenn. Code Ann. § 40-35-103. Sentences involving confinement should be based upon the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or;
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103.

After pleading guilty to the charged offenses, the defendant received a sentence of fourteen years and six months. As a standard offender convicted of Class D and E felonies, the defendant was presumed to be a favorable candidate for other forms of alternative sentencing in the absence of evidence to the contrary. *See* Tenn. Code Ann. § 40-35-102(6). The trial court considered the state's proof during the plea hearing, and noted that the defendant had a prior history of criminal convictions for the same type of offenses for which she was convicted in the present case. The trial court also considered impact statements from at least two victims who opposed probation for the defendant, and who expressed the general belief that the defendant targeted the elderly. The court further noted that the defendant violated the terms of her judicial diversion, and supervised probation by committing the thefts and forgeries for which she was convicted in the instant case. Finally, the court considered the fact that the defendant, in addition to past convictions for similar criminal acts, also faced pending charges for the same type of offenses in other jurisdictions including Washington County, Carter County, Johnson County and in the state of Virginia.

Based upon a review of the record, the defendant's pre-sentence report, and victim impact statements, it is clear that the trial court found a sufficient factual basis to overcome a presumption in favor of alternative sentencing. It is equally apparent that measures "less restrictive than confinement" were applied to the defendant unsuccessfully. *See* Tenn. Code Ann. § 40-35-103(1)(C). Her inability to comply with the terms of judicial diversion and supervised probation constitute failed past attempts at rehabilitation. *See State v. Fields*, 40 S.W.3d 435, 440 (Tenn. 2001). The trial court did not err in determining that the defendant's numerous convictions in the present case, and prior convictions for the same offenses warranted a denial of the alternative sentence. Therefore, we conclude that the trial court did not err in denying the defendant an alternative sentence and she is without relief on this issue.

### III. CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE

6